for the appellant, Mr. Goldenberg, and for the appellee, Mr. Sandberg. Just so you know, Justice Turner is listening to the arguments in the back. He's not feeling particularly well at the moment, so rather than coming out, he's got his tie-off in the back. You may proceed for the appellant. Thank you. Thank you, Justice Appleton. The primary issue before this Court is, what was the date of injury in the underlying case that resulted in the increased estate tax on Mr. Sunderland's death? Judge Pistorius granted a summary judgment, and we don't think that, we think that's a disputed question of fact that cut right to the chase. It's a matter of, it requires expert testimonies from CPAs and tax experts to say whether or not the proposition on which the summary judgment was based is something that can be determined at the summary judgment level with no testimony from experts and no facts as a matter of law. Judge Pistorius says in his order, he says, for the Court's purpose, the question within the question is when did the alleged injury occur? And that's right, because if the alleged injury occurred at the date of death, then there's a two-year statute from the date of Mr. Sunderland's death. If it occurred at any other time, then the statute of limitations regarding normal attorney negligence applies, and I believe we're within that time frame, because we're within the six-year statute of repose and we're within the two-year discovery of when the damage was the answer. To it, can Mary have corrected the problem prior to her death? If she could, then the injury occurred on June 18, 2004, the date of transfer. If she could, then the injury occurred on, well, if it couldn't be corrected, it occurred on June 18, 2004, could it have occurred on her date of death? And that's the real question. There's no question that when Mr. Sunderland and Mrs. Sunderland prepared their estate plans, they each had separate revocable trusts, and they took this piece of property and they deeded half of it into Mr. Sunderland's trust, half of it into Mrs. Sunderland's trust, which gave them the opportunity to get a fractional share discount for valuation purposes, for estate tax purposes. After Mr. Sunderland's death, Mrs. Sunderland, on advice of counsel, transferred the one-half interest of the property that was in Lloyd Sunderland's trust into her trust, therefore merging the fractional interest. Therefore, there could no longer be a fractional share discount. So the question is, could she have corrected this at any time prior to the date of her death, which is the basis upon which the defendant argues, I say, Mary could have easily eliminated the alleged problem at any time before her death by reducing the trust interest in the property to 50%. And we say, that's not true. She could have, there's no question, she could, she had, well there's a question whether or not at Mr. Sunderland's death, this half of the property should have been put in the family trust rather than in the marital trust. But once it's in the marital trust, Mrs. Sunderland had a power to withdraw. She didn't have a power of appointment, as they say, she had a power to withdraw it and then merge it into her trust. There's no question that once it's in her trust, she could have at any time taken half of it and put it in an irrevocable trust, or done something else with it, given it away to her children. But the real question is, would that have allowed them to get two fractional share discounts on each half of the property? And we say that you can't make that determination at summary judgment level. That's a question of fact. It requires expert testimony. It's a complicated tax issue. And we say, I say that I don't think it can be done. You can't just, once they're merged, you can't undo it and still get the full tax advantage that was obtained by separating the property once Mr. Sunderland died. As Mr. Sandberg, my esteemed colleague, and I were talking about in the good news, this argument's not going to take anywhere near 20 minutes, but there's three or four cases that are relevant here, and they're all distinguishable. The first one is a leading case on this statute of limitations, it's the Blackrow decision, which said the individual made an amendment to his revocable trust, which was alleged to be negligent. And the Blackrow decision said he could have any time, up until the date of death, given mental capacity, lack of undue influence, or duress, at any time up to the date of his death, he could have fixed that. He could have amended his trust, or revoked the amendment to the trust, or fixed his testamentary desires up to the date of death. Therefore, they say, if the date he died, that's when he could no longer change it back, that's the date of death, that's the date of injury in that case. Same things in Snyder. In that case, the party gave a deed to a piece of property when all he had was a beneficial interest, and they said that was the date of death, he could have corrected that by signing a transfer of the beneficial interest, and he would have accomplished it. That could have been done up to the date of death. They cite the Peterson cases and other cases before this Court, and the Peterson case, what's important about that case is it doesn't deal with what's the date of injury. The date of injury in that case is given. The date of injury is the date of death. All Peterson tells us, the only thing Peterson rules is that that statute governs both probate and non-probate transfers. It doesn't really address the issue before this Court. The date of injury is critical, and the only way I think they can prevail is if you follow what Judge Pistorius ruled, which is Mary could have corrected the problem at any time prior to the date of death just by simply taking this merged property and putting half of it in an irrevocable trust for the benefit of her children, and she could have then gotten two fractional interest discounts. They said she could have sold or signed half of it. That's not fair. We think that with all due respect to Judge Pistorius, until you have tax experts come into Court and say they think their expert will come in and say that she could have done any of these things up until the date she died, and they could have gotten the same two fractional interest discounts that they would have received had they been kept separate. We say that the expert is going to come in and say, no, it's not that easy, because once they're merged, you can't get the two fractional share interest, and you certainly couldn't do it in contemplation of death or on a deathbed transfer or anything like that. The other cases before this Court is the Strangie case, and what the Strangie case really shows us is that tax questions are very complex, and they're based on the individual facts and circumstances of that particular case, which again I think supports... I don't want to say it supports the argument that you could or couldn't have fixed this problem up to the date of death, but what that does support is it's a complex question where you need somebody to come in and say, here's what happened, and here's how you could have fixed it, and if you would have done it the way the defendants say you could have done it up to the date of death and the injury didn't occur until she died because she could have fixed it, or our expert, who I believe is going to come in and say, no, it's not that easy. Once they're merged, then your opportunity to get two fractional discounts is no longer viable, and that's... we're not deciding that in Judge Pastore's Court at this time. All we're deciding is, is this something upon which Judge Pastore could grant a summary judgment? That's a matter of law, and it is... most of the time I argue in front of the Fifth District Court, but I did read your rules, and it says, don't basically... don't waste our time telling us the obvious things that we already know, and I know you all, both of you and Justice Turner, know the standards upon which there's no way that we can prevail, there's no undisputed facts or inferences that can be drawn from the undisputed facts upon which we can prevail. And all toss-ups, all doubts go our way at the summary judgment level, and that's why we say I'm not here telling the justices that I'm going to win this case at the end of the day, although I think I might have a good chance at it, but I'm here arguing that I should have my time in court. I should have my chance, not at the summary judgment level to be ruled against, but I should have my chance to present my expert on this disputed fact of when the date of injury occurred to establish that if the date of injury did not occur at the date of Mrs. Sunderland's death, then we filed this action timely within the other statute of limitations that governs legal negligence cases. That's a pretty simple issue and a pretty simple argument, and in respect to the court's time, I think that unless you have any questions, I'm going to let Mr. Sandberg argue, and then I'll come back after that. Thank you, Mr. Goldenberg. Mr. Sandberg. Thank you. May it please the court. Mr. Goldenberg, may it please you. I do agree with counsel that the question here is very straightforward and simple, but this court should affirm the trial court which correctly held that Mrs. Sunderland's injury, increased estate taxes, and it's really the estate's injury, the kids are bringing it, but I'll refer to it as her injury, just makes it a little neater to talk about, occurred at the time of her death, and pursuant to 13214.3d, when the injury does not incur until the death of the person, the limitation is two years. Let me address one minor factual dispute first. The plaintiffs and their reply briefs say we are incorrect in claiming that Mrs. Sunderland did not have property interest to her own living trust. We took that statement in our brief from the plaintiff's complaint. They had it in their statement of fact in their opposition to our summary judgment. I'm not sure what the nature of the dispute is, but more importantly, that dispute about that allegation is about something that doesn't really matter because the question here is what was the injury and when did it occur? The undisputed facts are determinative here. What is undisputed? It's not disputed when the date of transfer was. It's not disputed when the date of death was. It's not disputed when they actually learned about the increased estate taxes, which is the date of the IRS determination letter. No dispute as these facts. Nevertheless, the plaintiffs claim that there are some unknown facts which prevent this from being proper for summary judgment. Well, that's kind of an interesting claim when we look at other decisions which have analyzed the time of injury as used in this statute of limitations. We look at what the Supreme Court in Wackrow v. Naimi, the 2008 decision, decided on a motion to dismiss. Peterson v. Wallach, the Supreme Court decision in 2002, was decided on a motion to dismiss. The Appellate Court decision of Snyder v. Heidelberger this last year was once again decided on a motion to dismiss. If each of these three cases could be decided on pleadings, then this case can be decided on summary judgment. What is the question the trial court answered and that this court should be answering? Well, Wackrow said it. And what they said, quote, the lone inquiry made by a court when determining whether Section 13-214.3d is applicable is simply whether the injury caused by the malpractice occurred upon the death of the client, unquote. Six years earlier, the Supreme Court and Peterson used the exact same quote in saying this is what Judge Pistorius did and what you should be doing. The Supreme Court in both Wackrow and Peterson looked at the clear wording of the statute where it says, quote, when the injury caused by the act or omission does not occur until the date of death, unquote, the limitation is two years. So the timing of the injury is the key question according to the words of the statute and according to what the Supreme Court has told us. How do we determine the timing of the injury? Well, we first determine what's the injury. The injury claimed as Mr. Goldenberg said by the plaintiffs in their suit is increased estate taxes. You know, when do you become liable to pay estate taxes? I don't think we need a citation to say you become liable once you die. And you're not, Mrs. Mary Sutherland didn't have any estate tax liability during her life. She owed estate taxes once she died. So the answer to the Supreme Court's lone inquiry, the injury is estate taxes, timing is date of death. Those facts are not disputed. And those facts match up with the words of the statute. Number two, the claimed injury in that case was increased estate tax liability. Same as this case. And the date of injury held in that case was the date of death. Now, the decision was about whether it applied to just probate assets or non-probate assets, but the facts of the case in the decision of the Supreme Court was with estate tax liability, it's date of death. And of course, in that case, it meant that the plaintiff had their cause of action against the lawyer, and they reversed the dismissal that had occurred. The Supreme Court said in Wackrow that the statute is clearly worded. And what does that mean when the Supreme Court says that? What it means is that it should be enforced according to its terms. Now, admittedly, before Mary Sunderland died, there was potential for injury, increased estate taxes, but potential is not the question posed by the statute, only the time the actual injury is. Appellants argue in their brief that they didn't know of this alleged malpractice until they got the IRS determination letter, but knowledge by the Sutherland children, the plaintiffs, of the loss and how it came about is not the question to be answered under the statute. That statute does not require knowledge of the claim. It's an absolute limit regardless of knowledge. Turning to the second question as defined by Mr. Goldenberg, which is, and I think it is appropriate to look at it as the second question. The first question is, what's the date of injury, which means you have to decide what the injury is and when it occurred. And the second question is, well, up to the time of death, could Mrs. Sutherland done, prevented injury by taking some action? Now I'll point you to the dissent in Snyder v. Heidelberger by Justice O'Malley because he, in reading Wackrow, says that Wackrow doesn't say that the problem has to be fixable. And why? Because whether or not it's fixable doesn't affect the timing of the injury and that whether or not you can fix it because that's not what the statute says. And of course the statute doesn't say anything about whether the client can fix the lawyer's error in its language about fixing it on the date of the injury. However, the fact that Mrs. Sutherland could have fixed the problem during life is further support for the fact that the injury occurred on her death. As the court said in Snyder, as long as the failure could have been remedied by having the client, quote, do something, unquote, then the date of death is when the injury occurred. Fixing the problem is just one way of analyzing if the injury occurred at the time of death, which is what the statute requires. Now Mary could have sold or gifted away her 50% interest and gotten a minority interest on the gift or sale when it occurred, and then at death she would have only owned a 50% interest and gotten a further minority discount. Plaintiffs say in their brief that this action to recreate the minority interest, quote, would not be easy, but they don't claim that Mrs. Sutherland could not do the transfers. And the estate of Strangie case, which counsel says is complicated, yeah, it is complicated, the facts are complicated in there, but the bottom line of that decision was that Strangie transferred millions of dollars worth of assets into a family limited partnership three months before death, and then on death they were claiming because they did a minority interest in this, or lack of control I partnership, that they could take a discount, and the court allowed a 31% discount in that circumstance. And, of course, Mrs. Sutherland, in addition to giving away, could have sold the 50% interest at fair market value. And, of course, by definition the whole basis of a minority discount is that your fair market value is lower when you only have a fair market value, which would have been part of her estate. She would get the discount on half the property on sale, and then the discount on the other half when she died and filed her estate tax return. In conclusion, because the nature of the injury, increased estate taxes, and the date of injury, death, are not disputed facts, this court can not dispute them. We have a unified gift in estate tax law in the United States, and one thing I think that Mr. Sandberg and I, and hopefully the justices agree with, the tax law is very complex in our country. It's not easy. But we're not only talking about the estate tax, we're talking about the incremental estate tax. I would call it a cottage industry for CPAs, and they're making it even better with the recent stuff. But it's the incremental state, it's the incremental tax. And, again, discounts, you couldn't have sold half this property, by the way, and if you had sold it, you wouldn't have taken the fractional share discount. So we all know how we do these marketable securities. We do it for tax planning, but it couldn't have been done the way he says it. So I don't think that he can say that that's clear, and this business, excuse me, inappropriate word, the statement that this could have been fixed any time up to the date of her death, which is what you really need for Wackrow and Snyder, is simply not true when you're talking about the tax planning and obtaining discounts. Why isn't it true? Because, first of all, once you have it separated and Mr. Sunderland dies, you then have two separate parcels, and you have a separate fractional share interest. Once you have it merged together, then the discounts are different. You no longer have two fractional shares, so you have to create the fractional shares again. Well, that would be my point. I mean, you could undo what you did, correct? I mean, if she inherited her husband's one-half fractional share and made it to herself, personal representative to the individual, so that she now owns the whole thing, she can undo that as easily as she did it, right? I think that's the real question, Justice Appleton. That's the real question, and I think that it can't be done that easily, and I think that expert testimony will prove that, because, again, you have two taxpayers, a Mr. Sunderland and a Mrs. Sunderland, and then you just divide it up. When you step up in basis in his property, and then you have her basis, and then you bring it all together, then you no longer have two separate parcels for which you can get two separate fractional interests. Now, you can put the properties together, then you can separate them, and then you may have two separate parcels for which you have a fractional share discount, but how do you get them separated? And what's the value? How does she do this? To separate them, she's got to get them out of her taxable estate. She's got to do that somehow. Well, there could be a stepped-up basis on his share that would, you know, that it became more valuable, and it's got a stepped-up basis at that point, but, I mean, to say that it can't be done, I think is probably wrong. It could be. It could be disadvantageous to her at that point in time, but it could be done. Oh, she could definitely transfer the property out. There's no question. She had the power to transfer the property out, but would that have allowed her to recapture the two fractional share discounts that she otherwise would have had had they been kept separate? You're absolutely right, Justice. There's no question that she could have put the properties together, and she could have put them in two separate parcels or six separate parcels or anything she wanted to do. She had the full power to do whatever she wanted to do, but since she held them to the date of her death, could she have done something to get back the two fractional share discounts? And I say definitely not up to the date of her death. Maybe if the lawyer would have realized in 2005 or 2006 that this is a mistake, and they might have been able to do some planning back then, but this is not one that could have been fixed up until she could. It's my opinion that she couldn't have done this up to the date of her death. She couldn't have done it the day before she died and still have created not one, but two fractional share discounts. And I believe that. I think it's my opinion. I think, again, I should be entitled to try and prove this with expert testimony at a trial rather than to have Judge Pistorius, with all due respect to him, rule as a matter of law that she could have, because that's what he says, she could have fixed this up to the date of her death just by transferring half of the property out, and the incremental estate tax, the two fractional share discounts, which are that that could have all been regained simply by taking a simple step and taking this one parcel of property and transferring half of it out, 40% out, 60% out, and put it in an irrevocable trust up to the date of death. And then she would have received the exact same tax benefit in reducing her estate tax at the date of her death. And I don't think that's, while I don't think that's accurate, I certainly don't think it's a matter of advisement.